Robert C. Moest, Of Counsel, SBN 62166
**THE BROWN LAW FIRM, P.C.**
2530 Wilshire Boulevard, Second Floor
Santa Monica, CA  90403
Telephone:  310-915-6628
Facsimile:  310-915-9897
Email: RMoest@gmail.com

*Counsel for Derivative Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  BEYOND MEAT, INC. DERIVATIVE LITIGATION, | Case No. CV-20-2524-MWF (AFMx) |
| This Document Relates to:<br><br>ALL ACTIONS | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT**<br><br>Hon. Michael W. Fitzgerald<br><br>Hearing Date: February 14, 2022<br>Time: 10:00 A.M.<br>Ctrm: 5A |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ..........................................3

   A. The Consolidated Action .....................................................................3

   B. The Delaware Action ...........................................................................5

   C. Settlement Negotiations .......................................................................6

III. TERMS OF THE PROPOSED SETTLEMENT ................................................7

IV. THE    PROPOSED    SETTLEMENT    WARRANTS    PRELIMINARY
      APPROVAL ...............................................................................................9

   A. Legal Standards for Preliminary Approval of the Settlement ...........9

   B. The Settlement Is Within the Range of Possible Approval .............11

      1. The   Settlement   Is   the   Result   of   Non-Collusive,   Arm's-Length
         Negotiations ...................................................................................11

      2. The Settlement Appropriately Balances the Substantial Benefits Secured
         for the Company and its Stockholders Against the Risks,  Costs, and
         Delays of Continued Litigation ....................................................12

         a. The Settlement Confers Substantial Benefits Upon Beyond Meat
            and Its Stockholders...................................................................13

         b. Continued Litigation Would Be Costly, Risky, and Expensive .........16

         c. Experienced Counsel Support the Settlement.....................................17

V.   THE COURT SHOULD APPROVE THE FORM AND MANNER OF
      NOTICE ...................................................................................................18

VI.  PROPOSED SCHEDULE..........................................................................20

VII. CONCLUSION .........................................................................................21

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ................................................................ 10

*Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotechnology,*
   *Inc. v. Auerbach*,
   2019 WL 7753447 (C.D. Cal. Jan. 7, 2019) .......................................... 15

*Bushansky v. Armacost*,
   2014 WL 2905143 (N.D. Cal. June 25, 2014) ................................... 19-20

*City of Birmingham Relief & Ret. Sys. v. Hastings*,
   2019 WL 3815722 (N.D. Cal. Feb. 13, 2019) ....................................... 16

*City of Taylor Gen. Employees Ret. Sys. v. Astec Indus., Inc.*,
   2019 WL 2611013 (E.D. Tenn. June 26, 2019) ..................................... 18

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................... 9, 14

*de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*,
   2018 WL 6003560 (C.D. Cal. Nov. 5, 2018) .......................................... 9

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ........................................................... 10

*In re Accuray, Inc. S'holder Derivative Litig.*,
   757 F. Supp. 2d 919 (N.D. Cal. 2010) ................................................. 16

*In re AOL Time Warner S'holder Derivative Litig.*,
   2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ............................. 10, 11, 13-14, 16

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996) ........................................................... 16

*In re Ceradyne, Inc.*,
   2009 WL 10671494 (C.D. Cal. June 9, 2009) ................................... passim

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
   2015 WL 1153864 (N.D. Cal. Mar. 13, 2015) ....................................... 13

*In re India Globalization Capital, Inc., Derivative Litig.*,
   2020 WL 2097641 (D. Md. May 1, 2020) ............................................. 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir.) ..................................................................... 13

*In re MRV Commc'ns, Inc. Derivative Litig.*,
  2013 WL 2897874 (C.D. Cal. June 6, 2013)..............................................10, 19

*In re NVIDIA Corp. Derivative Litig.*,
  2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) .......................................10, 14, 16

*In re OSI Sys., Inc. Derivative Litig.*,
  2017 WL 5634607 (C.D. Cal. Jan. 24, 2017)..........................................9, 10, 16

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .....................................................................16, 17

*In re Rambus Inc. Derivative Litig.*,
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .....................................................20

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. Apr. 7, 2020) .................................................17

*In re Xcel Energy, Inc.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................9

*Katz v. China Cent. Dragon Media, Inc.*,
  2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) .................................................17

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970)........................................................................................13

*Mullane v. Central Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)........................................................................................19

*Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. Jan. 5, 2004) .........................................................17

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..........................................................................11

*Shlensky v. Dorsey*,
  574 F.2d 131 (3d Cir. 1978) ...........................................................................13

*Talley v. Mann*,
  2012 WL 12918344 (C.D. Cal. Sept. 12, 2012).................................................11

*Unite Nat'l Ret. Fund v. Watts*,
  2005 WL 2877899 (D.N.J. Oct. 28, 2005) ........................................................14

*Weiss v. Swanson*,
  948 A.2d 433 (Del. Ch. 2008) .........................................................................16

## OTHER AUTHORITIES

Fed. R. Civ. P. 23.1(c) .......................................................................9, 18

Manual for Complex Litigation, Fourth § 13.14 (2004) ...............................9

Plaintiffs Eric Weiner ("Weiner"), Kimberly Brink ("Brink"), and Melvyn Klein ("Klein") (together, "Derivative Plaintiffs") in this consolidated shareholder derivative action (the "Consolidated Action") respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement (the "Motion").[1]

## I.    INTRODUCTION

Derivative Plaintiffs' claims brought putatively on behalf of Beyond Meat, Inc. ("Beyond Meat" or the "Company") arise from the Individual Defendants' alleged breaches of fiduciary duties, unjust enrichment, waste of corporate assets, abuse of control, gross mismanagement, and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and alleged aiding and abetting by ProPortion Foods, LLC ("Proportion") and CLW Foods, LLC ("CLW"). After extensive, arm's-length negotiations, the Settling Parties reached an agreement that resolves Derivative Plaintiffs' claims in the Consolidated Action, as set forth in the Stipulation (the "Settlement"). The Settlement also resolves claims brought by plaintiff Kevin Chew ("Chew," and with Derivative Plaintiffs, "Plaintiffs") in the derivative action pending in the U.S. District Court for the District of Delaware ("Delaware Court") captioned *Chew v. Thompson, et al.*, 1:20-cv-00705-RGA, (the "Delaware Action," and with the Consolidated Action, the "Derivative Actions").[2]

Pursuant to the terms of the Settlement, Beyond Meat will adopt and implement the corporate governance reforms set forth in Exhibit A to the Stipulation for a period of at least four years (the "Reforms"). Pursuant to the Reforms, Beyond

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as those set forth in the Stipulation of Settlement dated January 14, 2022 (the "Stipulation" or "Stip."), attached as Exhibit 1 to the Declaration of Robert C. Moest in support of the Motion submitted herewith.

[2] Within five days after the Effective Date, plaintiff Chew, with the cooperation of the Settling Defendants, will file appropriate papers with the Delaware Court to voluntarily dismiss the Delaware Action with prejudice. Stip., §IV, ¶5.1.

Meat will, *inter alia*: (1) establish a Risk Committee, governed by the Risk Committee Charter in the Appendix to Exhibit A of the Stipulation; (2) publish whistleblower and corporate governance information on its website; (3) amend the Audit Committee Charter to account for the new Risk Committee and to provide that the Audit Committee will assist the Risk Committee and Beyond Meat's Chief Legal Officer with monitoring compliance with the Company's Code of Conduct; and (4) impose new director independence requirements. The Reforms confer substantial benefits upon Beyond Meat and address internal control and oversight concerns raised by Plaintiffs that Plaintiffs contend led to wrongdoing alleged in the Derivative Actions. As a direct result of the Settlement, Beyond Meat and its stockholders are positioned to reap long-term corporate governance benefits through the Reforms.

After agreeing in principle to the material terms of the proposed settlement, the Settling Parties separately negotiated, at arm's length, the attorneys' fees and expenses that would be payable to Plaintiffs' Counsel. In recognition of the substantial benefits provided to Beyond Meat and Beyond Meat stockholders as a result of the Reforms, the Settling Parties agreed that the Company would pay Plaintiffs' Counsel $515,000 for their attorneys' fees and expenses (the "Fee and Expense Amount"). *See* Stip., §IV, ¶4. The Settling Parties now seek preliminary approval of the Settlement.

At the preliminary approval stage, the Court need only conclude that the proposed Settlement is within the range of resolutions that might ultimately be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Current Beyond Meat Stockholders and a hearing should be scheduled to determine whether to approve the Settlement and award Plaintiffs' Counsel agreed-to payment of attorneys' fees and expenses. Derivative Plaintiffs respectfully submit that the Settlement easily meets this standard and request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit C to the Stipulation, which preliminarily approves the Settlement, authorizes the form and manner of providing

notice of the Settlement to Current Beyond Meat Stockholders, and sets a date for the Settlement Hearing.

Defendants do not oppose the Motion or any of the requested relief.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Beyond Meat is a California-based food company that offers a variety of plant-based meat products, including vegan beef, pork, and poultry. ¶75.[3] In 2014, Beyond Meat entered into a written supply agreement (the "Supply Agreement"), with Don Lee Farms ("Don Lee"), pursuant to which Don Lee would produce, test, and ship the Company's product offerings for distribution and sale. ¶¶3, 78-79. Under an amendment to the Supply Agreement in 2016, Don Lee became the exclusive co-manufacturer for Beyond Meat's products. ¶78.

Derivative Plaintiffs allege in the Consolidated Action that the Individual Defendants breached their fiduciary duties to the Company by allowing or causing Beyond Meat to, *inter alia*: alter food reports submitted to Don Lee to exclude pertinent safety information; wrongfully terminate the Supply Agreement; misappropriate Don Lee's trade secrets with two other manufacturers, ProPortion and CLW Foods, LLC; and fail to maintain internal controls. ¶¶8-12; Stip., §I. Derivative Plaintiffs also allege in the Consolidated Action that certain of the Individual Defendants made and/or caused the Company to violate Section 14(a) of the Exchange Act by making and/or causing the Company to make false and misleading statements and omissions of material fact. *See id*.

### A.   **The Consolidated Action**

On March 16, 2020, Plaintiff Weiner filed a Verified Shareholder Derivative Complaint putatively on behalf of Beyond Meat against certain of the Individual Defendants, asserting claims for breach of fiduciary duties, unjust enrichment, waste

---

[3] Unless otherwise noted, all references to "¶__" or "¶¶__" are to the verified Consolidated Amended Shareholder Derivative Complaint filed on May 24, 2021 in the Consolidated Action (the "Consolidated Complaint"). (ECF. No. 34).

of corporate assets, and for contribution under Section 10(b) and 21D of the Exchange Act (the "*Weiner* Action"), in the United States District Court for the Central District of California (the "Court"). (ECF No. 1).

On March 18, 2020, Plaintiffs Brink and Klein filed a similar Verified Shareholder Derivative Complaint putatively on behalf of Beyond Meat against certain of the Individual Defendants, asserting claims for breach of fiduciary duties, unjust enrichment, waste of corporate assets, and for contribution under Sections 10(b) and 21D of the Exchange Act (the "*Brink* Action"), in the Court. (*Brink* Action, ECF No. 1).

On April 1, 2020, the Court entered an order consolidating the *Weiner* Action and the *Brink* Action to form the Consolidated Action and directed the parties to meet and confer on the appointment of lead counsel and/or lead plaintiffs. (ECF No. 12).

On April 10, 2020, the parties to the Consolidated Action submitted a joint stipulation designating The Brown Law Firm, P.C. and Gainey McKenna & Egleston as Co-Lead Counsel for Derivative Plaintiffs in the Consolidated Action. (ECF No. 15). The Court so-ordered the parties' stipulation on April 13, 2020. (ECF No. 16).

On June 22, 2020, the parties to the Consolidated Action along with Court-appointed lead and liaison counsel in a related securities class action captioned *Tran v. Beyond Meat, Inc.*, Case No. 20-cv-963 (C.D. Cal.) (the "Securities Class Action") filed a joint stipulation to stay the Consolidated Action until either: (i) dismissal of the Securities Class Action with prejudice, and exhaustion of all appeals related thereto, or (ii) any denial in whole or in part of any motion to dismiss the Securities Class Action. (ECF No. 28). The Court so-ordered the stipulation on June 23, 2020. (ECF No. 29).

On October 27, 2020, the Court dismissed the Securities Class Action with prejudice, except for class allegations of absent putative class members, which claims were dismissed without prejudice. (Securities Class Action, ECF No. 73).

On April 20, 2021, the parties to the Consolidated Action filed a joint

stipulation setting forth a proposed schedule for Derivative Plaintiffs' amended complaint and the parties' briefing schedule. (ECF No. 31). On April 21, 2021, the Court entered an order setting a briefing schedule and date for Derivative Plaintiffs to file their amended complaint. (ECF No. 32).

On May 24, 2021, Derivative Plaintiffs filed the Consolidated Complaint putatively on behalf of the Company against the Individual Defendants for alleged breaches of their fiduciary duties, unjust enrichment, waste of corporate assets, abuse of control, gross mismanagement, and for alleged violations of Sections 14(a) of the Exchange Act, and against ProPortion and CLW (together with the Individual Defendants and Beyond Meat, the "Defendants") for alleged aiding and abetting the Individual Defendants' breaches of their fiduciary duties. (ECF No. 34). On May 25, 2021, upon the represented parties' stipulation, the Court set July 8, 2021 as the deadline for Defendants to respond to the Consolidated Complaint. (ECF No. 37).

**B.** **The Delaware Action**

On May 27, 2020, Plaintiff Chew filed a Verified Shareholder Derivative Complaint putatively on behalf of Beyond Meat against certain of the Individual Defendants, asserting claims for breach of fiduciary duties and for contribution under Sections 10(b) and 21D of the Exchange Act in the Delaware Court. (Delaware Action, ECF No. 1).

On June 15, 2020, the parties to the Delaware Action filed a joint stipulation to stay the action until: (i) dismissal of the Securities Class Action with prejudice, and exhaustion of all appeals related thereto, or (ii) any denial in whole or in part of any motion to dismiss the Securities Class Action. (Delaware Action, ECF No. 7). The Delaware Court so-ordered the stipulation the next day, on June 16, 2020, and administratively closed the Delaware Action on June 17, 2020. (Delaware Action, ECF Nos. 8, 9).

On July 28, 2021, the parties to the Delaware Action filed a stipulation to continue the stay until resolution of the Consolidated Action. (Delaware Action, ECF

No. 12). The Delaware Court so-ordered the joint stipulation on July 29, 2021. (Delaware Action, ECF No. 13).

**C.**     **Settlement Negotiations**

On May 17, 2021, before filing the amended complaint in the Consolidated Action, Plaintiffs' Counsel provided Settling Defendants' Counsel with a settlement demand that included a comprehensive corporate governance reforms proposal. Stip., §I, C.

On July 1, 2021, the represented parties in the Consolidated Action filed a joint stipulation informing the Court that the parties were currently engaged in discussions to resolve the Consolidated Action and sought a 90-day extension to pursue such discussions. (ECF No. 41). The same day, the Court entered an order continuing the deadline for Defendants to respond to the Consolidated Complaint to October 15, 2021, and ordered the parties to report back to the Court by October 1, 2021 on their progress in reaching a resolution of the Consolidated Action. (ECF No. 42).

On August 17, 2021, Settling Defendants' Counsel made a written settlement counterproposal. Stip., §I, C. The Settling Parties continued to engage in good faith settlement negotiations over the following months, including by exchanging various drafts of proposed corporate governance reforms, until they reached an agreement-in-principle to settle the Derivative Actions. *Id.*

On October 1, 2021, the represented parties in the Consolidated Action filed a joint status report regarding settlement, informing the Court that the parties had reached a tentative settlement and requesting the Court to vacate the current briefing schedule and to set November 19, 2021 as the deadline for Derivative Plaintiffs to move for preliminary approval of the settlement. (ECF No. 43). The Court entered an order to that effect on October 4, 2021. (ECF No. 44).

On October 28, 2021, the Settling Parties executed a settlement term sheet that memorialized the material terms of the settlement ("Settlement Term Sheet"),

1   including the Reforms that Beyond Meat would adopt as consideration for the

2   settlement, set forth in Exhibit A to the Stipulation. Stip., §I, C.

3        Only after the Settling Parties executed the Settlement Term Sheet, did they

4   engage in arm's length negotiations over the attorneys' fees and expenses that would

5   be payable to Plaintiffs' Counsel in recognition of the substantial benefits achieved

6   through the settlement. *Id.* Ultimately, on January 14, 2022, the Company agreed to

7   pay $515,000 for Plaintiff's Counsel attorneys' fees and expenses.

8        On November 18, 2021, the represented parties to the Consolidated Action

9   filed a joint stipulation for an extension of time to move for preliminary approval of

10  the settlement. (ECF No. 45). The Court entered an order to that effect on November

11  19, 2021, extending the deadline for the filing of the motion for preliminary approval

12  of settlement until December 20, 2021. (ECF No. 46).

13       On December 20, 2021, the represented parties in the Consolidated Action

14  filed another joint stipulation for an extension of time move for preliminary approval

15  of the settlement. (ECF No. 47). The Court entered an order to that effect the same

16  day, extending the deadline for the filing of the motion for preliminary approval of

17  settlement until January 14, 2022. (ECF No. 48).

18       On January 14, 2022, the Settling Parties executed the Stipulation, which

19  memorialized the material terms of the settlement of the Derivative Actions.

20  **III.   TERMS OF THE PROPOSED SETTLEMENT**

21       In consideration of the Settlement, Beyond Meat will adopt and implement the

22  Reforms for a period of no less than four years. The Reforms, summarized below,

23  provide substantial benefits to the Company and its stockholders and are tailored to

24  address Plaintiffs' concerns regarding Beyond Meat's system of oversight, disclosure

25  controls, and risk management. The Reforms also strengthen the Company's overall

26  corporate governance and internal controls, generally, and include the following:

27       <u>Risk Committee:</u> Beyond Meat will establish a Risk Committee, which shall

28  be governed by the Risk Committee Charter in the appendix to Exhibit A of the

Stipulation. The Risk Committee Charter sets forth, *inter alia*, the Risk Committee's: (1) purpose; (2) membership and organization; (3) authority and responsibilities; (4) meeting schedule; (5) requirements as to the preparation of minutes and reports; (6) charter review responsibilities; and (7) alignment and coordination with the Audit Committee. Stip., Exhibit A, App'x.

Publishing Whistleblower and Corporate Governance Information: Beyond Meat will publish on its website: (i) contact information about its whistleblower program, and (ii) non-confidential written corporate governance guidelines.

Audit Committee Charter: Beyond Meat will amend the Audit Committee Charter as follows:

a.     The Audit Committee Charter will reflect and account for the newly created Risk Management Committee and its responsibilities. In the event there is overlap of responsibilities, the committees will coordinate to avoid unnecessary duplication of efforts and will apportion responsibilities according to each committee's stated purpose; and

b.     The Audit Committee will assist the Risk Management Committee and Chief Legal Officer in an annual review of the Code of Conduct, in addition to assisting the Risk Management Committee and Chief Legal Officer in monitoring compliance with the Code of Conduct.

Director Independence: At least two-thirds of the members of the Company's Board of Directors (the "Board") will be "independent directors," as defined by the NASDAQ listing standards, Sarbanes-Oxley Act, and described below. In the event the Board is not in compliance with this requirement, it will take steps to return to compliance within 180 days. To be deemed "independent" in any calendar year, a director would have to satisfy the following qualifications in addition to those set forth in Listing Rule 5605 of the NASDAQ Stock Market's Equity Rules and any other statutory director independence requirement:

a.  has no personal services contract(s) with Beyond Meat or any member of the Company's senior management; and

b.  is not employed by a public company at which an executive officer of Beyond Meat serves as a director, regardless of whether that executive officer serves on the compensation committee of that public company.

*See* Stip., Exhibit A.

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Legal Standards for Preliminary Approval of the Settlement

A derivative action "may be settled . . . only with the court's approval." Fed. R. Civ. P. 23.1(c). Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." *Id.* There is a "strong judicial policy" favoring compromises that resolve litigation. *de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018) (internal quotation marks omitted). "Settlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 1002 (D. Minn. 2005)).

Preliminary approval is the first of two stages that comprise the approval procedure for settlements of derivative actions. The Court first reviews the proposed settlement preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the Court then considers final approval of the settlement in a settlement hearing, after notice of settlement is provided to stockholders. MANUAL FOR COMPLEX LITIGATION, FOURTH § 13.14 (2004); *In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5634607, at *1 (C.D. Cal. Jan. 24, 2017) ("[A]pproval of a derivative action appears to be a two-step process, similar to that employed for approving class action settlements, in which the Court first determines whether a proposed settlement

deserves preliminary approval and then, after notice of the settlement is provided to class members, determines whether final approval is warranted.") (quoting *In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 WL 2897874, at *2 (C.D. Cal. June 6, 2013)).

"In order to grant preliminary approval, the Court need only conclude that the settlement of the claims on the agreed upon terms is 'within the range of possible approval.'" *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008). To be "within the range of possible approval," the Settlement must be fair, reasonable, and adequate. *Id.* At the preliminary approval stage, the Court need only determine that the Settlement is "*potentially* fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).

The approval of a settlement is left to the "sound discretion" of the trial court. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). The standard of review to be applied is whether the Settlement "is so unfair on its face as to preclude judicial approval." *In re Ceradyne, Inc.*, 2009 WL 10671494, at *1 (C.D. Cal. June 9, 2009) (internal quotation marks omitted). In determining whether a proposed settlement in a derivative action serves the interests of the corporation on whose behalf the action was brought, the Court should "inquire whether the compromise is fair, reasonable and adequate, with respect to both the negotiating process leading up to settlement as well as the settlement's substantive terms." *Id.* (quoting *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *6-7 (S.D.N.Y. Sept. 6, 2006)); *see also OSI Sys.*, 2017 WL 5634607, at *2 (explaining that a settlement must be within the range of possible approval, result from "serious, non-collusive negotiations," and "have no obvious deficiencies").

Derivative Plaintiffs submit that this Court can find that the proposed Settlement is reasonable because the Settlement here was negotiated in good faith at arm's-length among experienced counsel and will result in substantial benefits for Beyond Meat and its stockholders. The Settlement is specifically designed to address the alleged governance shortcomings that Plaintiffs contend contributed to the

1  alleged misconduct at issue in the Derivative Actions. Furthermore, given the

2  complexities of the Derivative Actions and the uncertainties inherent in shareholder

3  litigation, the proposed Settlement eliminates the risk that Beyond Meat might

4  otherwise not recover anything, including the improvement to corporate operations

5  through the Reforms. Settlement at this stage in the litigation will also limit the

6  expense of risky, unnecessary, and prolonged litigation, which is in the best interest

7  of Beyond Meat, its stockholders, and the Settling Parties. Moreover, "[t]here is no

8  evidence of fraud, overreaching, or collusion amongst the parties, and the

9  [S]ettlement lacks any obvious deficiencies." *Talley v. Mann*, 2012 WL 12918344,

10  at *3 (C.D. Cal. Sept. 12, 2012). These reasons are more than sufficient to support

11  Derivative Plaintiffs' submission that the Settlement is "within the range of possible

12  approval" and should be preliminarily approved, as set forth below.

    **B.**    **The Settlement Is Within the Range of Possible Approval**

        **1.**    **The Settlement Is the Result of Non-Collusive, Arm's-Length**
                **Negotiations**

16  As discussed above, in evaluating whether a settlement is fair, reasonable, and

17  adequate, courts consider the procedural fairness of the negotiating process. *See*

18  *Ceradyne*, 2009 WL 10671494, at *1 ("[C]ourts commonly inquire whether the

19  compromise is fair, reasonable and adequate, with respect to both the negotiating

20  process leading up to settlement as well as the settlement's substantive terms.")

21  (quoting *AOL Time Warner*, 2006 WL 2572114, at *2). Courts view settlements

22  negotiated at arm's length with favor. *See Rodriguez v. West Publishing Corp.*, 563

23  F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an

24  arms-length, non-collusive, negotiated resolution.").

25  The negotiating process here demonstrates that the Settlement is procedurally

26  fair. The Settling Parties entered into the Settlement after they thoroughly evaluated

27  the risks of continued litigation and obtained sufficient information to support the

28  decision on the fairness, adequacy, and reasonableness of the Settlement. *See* Stip.,

§§II, III. Plaintiffs' Counsel have conducted extensive investigation and analysis, including, *inter alia*: (i) reviewing and analyzing Beyond Meat press releases, public statements, filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) reviewing and analyzing securities analysts' reports and advisories and media reports about the Company; (iii) reviewing and analyzing the pleadings contained in the Securities Class Action and the lawsuit filed by Don Lee in the Superior Court of the State of California captioned *Don Lee Farms v. Savage River, Inc.*, Case No. BC662838 (Cal. Super. Ct.); (iv) researching the applicable law with respect to the claims alleged in the Derivative Actions and the potential defenses thereto; (v) preparing and filing the complaints in the Derivative Actions; (vi) conducting research into the Company's corporate governance structure in connection with settlement efforts; (vii) preparing a comprehensive written settlement demand and modified demands during the course of the Settling Parties' settlement negotiations; (viii) engaging in settlement negotiations with Settling Defendants' Counsel regarding the specific facts, and perceived strengths and weaknesses of the Derivative Actions, and other issues in an effort to facilitate negotiations; and (ix) negotiating the material terms of the settlement, and negotiating and drafting the Settlement Term Sheet and the comprehensive Stipulation. Stip., §II.

The Settling Parties exchanged multiple corporate governance reforms proposals prior to reaching an agreement-in-principle to settle the case. *Id.*, §I, C. Only following their agreement in principle on the material terms of the Settlement did the Settling Parties separately negotiate the attorneys' fees and expenses payable to Plaintiffs' Counsel. *Id.* Thus, the Settlement is procedurally fair, as it was reached only after extensive arm's-length negotiations between counsel in good faith.

> **2.     The Settlement Appropriately Balances the Substantial Benefits Secured for the Company and its Stockholders Against the Risks, Costs, and Delays of Continued Litigation**

In considering whether a proposed settlement appears fair, adequate, reasonable, and within the range of possible approval, courts also consider the substantive terms of the Settlement. *Ceradyne*, 2009 WL 10671494, at *1. As part of this inquiry, courts balance a number of factors, including: (1) "the strength of the plaintiffs' case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the amount offered in settlement"; (4) "the extent of discovery completed and the stage of proceedings"; and (5) "the experience and views of counsel." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 2015 WL 1153864, at *3 (N.D. Cal. Mar. 13, 2015) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir.)). However, the "principal factor to be considered . . . is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Ceradyne*, 2009 WL 10671494, at *2 (quoting *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978)).

Derivative Plaintiffs respectfully submit that the Settlement is an excellent result and easily meets the standards for both preliminary and final approval. Beyond Meat and the Individual Defendants acknowledge and agree that the Reforms confer substantial benefits to Beyond Meat and Beyond Meat's stockholders, and Beyond Meat and the Individual Defendants acknowledge and agree that the filing, pendency, and settlement of the Derivative Actions was the primary cause of the Company's decision to adopt and implement the Reforms. Stip., §IV, ¶¶2.2-2.3. Moreover, the members of the Board, in exercising their business judgment, have determined that the Settlement, including all of its terms as set forth in the Stipulation, is in the best interest of Beyond Meat and its stockholders. *Id.*, §IV, ¶2.4.

a.   The Settlement Confers Substantial Benefits Upon Beyond Meat and Its Stockholders

Courts widely recognize that "a corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *see also AOL Time Warner*,

2006 WL 2572114, at *4 (non-monetary benefits alone can be "substantial enough to merit [settlement] approval"); *Unite Nat'l Ret. Fund v. Watts*, 2005 WL 2877899, at *2 (D.N.J. Oct. 28, 2005) (noting that non-monetary benefits can be extremely valuable where "the relief is intended to prevent future harm"). Strong corporate governance is fundamental to a corporation's well-being and success and, thus, many "[c]ourts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies." *NVIDIA*, 2008 WL 5382544, at *3 (quoting *Cohn*, 375 F. Supp. 2d at 853). "Non-monetary benefits can be particularly valuable 'when the relief is intended to prevent future harm.'" *Ceradyne*, 2009 WL 10671494, at *2 (quoting *Watts*, 2005 WL 2877899, at *2).

The Reforms confer this sort of substantial benefit here. As a result of the Settlement, Beyond Meat has agreed to adopt corporate governance reforms for no less than four years that specifically address the allegations in the Derivative Actions.

The new Risk Committee will significantly improve the Company's corporate governance by ensuring robust oversight of the management of key risks. As set forth in the detailed charter in the appendix to Exhibit A, the Risk Committee will review and discuss with management the Company's risk governance structure, risk assessment and risk management practices; the guidelines, policies, and processes for risk assessment and risk management; and the effectiveness of applicable risk management frameworks. The Risk Committee will also review and discuss with management the categories of risk the Company faces, including strategic and operational risks and legal, compliance and ethics risks, the Company's risk tolerance and strategy relating to key risks as well as the guidelines, policies and processes for monitoring and mitigating such risks. Stip., Exhibit A, App'x.

The Risk Committee is also tasked with assessing the Company's compliance and risk mitigation programs, reviewing disclosures regarding risks in the Company's quarterly and annual reports, reviewing reports on selected risk topics from time to time, delegating its authority where appropriate, and discharging other

duties or responsibilities delegated to it by the Board or Audit Committee. The Risk Committee shall be composed of at least three members of the Board, meet no fewer than four times each year, and make regular reports to the Board and, where applicable, the Audit Committee. The Risk Committee will periodically review its own composition and performance and report on its conclusions in this regard to the Board. In addition, the Committee will annually review its charter and make recommendations to the Board regarding appropriate changes. *Id.*

The creation of the Risk Committee is "particularly valuable" to the Company because it will "prevent future harm" by ensuring that the Board engages in active oversight of the Company's risk management practices. *See Ceradyne*, 2009 WL 10671494, at *2 (internal quotation marks omitted). In addition to substantially improving the Company's corporate governance structure and practices by creating the new Risk Committee, the Reforms also improve the Audit Committee Charter and expand the Audit Committee's responsibilities to require it to assist the Risk Committee and Chief Legal Officer in monitoring compliance with and conducting an annual review of the Code of Conduct. Stip., Exhibit A.

Furthermore, the Reforms improve transparency and accountability at the Company by requiring that the Company publish corporate governance guidelines and information about its whistleblower program on its website. The Reforms also protect the Board from the undue influence of insiders by imposing new independence requirements on the Board's directors. *Id*; *see Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, 2019 WL 7753447 (C.D. Cal. Jan. 7, 2019) (noting that improving board independence "will help diffuse control of the Board by insiders with separate interests from those of [company] stockholders.").

The benefits conferred upon Beyond Meat and its stockholders as a result of the Settlement: (i) are immediate and long-lasting; (ii) address Plaintiffs' allegations in the Derivative Actions; and (iii) will reduce the likelihood that lapses similar to

the alleged lapses giving rise to the Derivative Actions will recur in the future. In addition to the benefits conferred by the Reforms, the Settlement provides the benefit of releasing Beyond Meat (as well as the rest of the Settling Parties) from the burden and expense of further litigation. *See OSI Sys.*, 2017 WL 5634607, at *2 ("The settlement also allows [the company] to avoid costly future litigation in this matter."). Thus, the Settlement substantially benefits Beyond Meat and its stockholders.

> b.   Continued Litigation Would Be Costly, Risky, and Expensive

These substantial benefits demonstrate the reasonableness of the Settlement in light of the risk, expense, and likely duration of continued proceedings. While Plaintiffs and their counsel believe that their claims are meritorious and that their investigations thus far support such belief, derivative litigation is "notoriously difficult and unpredictable." *NVIDIA*, 2008 WL 5382544, at *2 (quoting *AOL Time Warner*, 2006 WL 2572114, at *8). Indeed, "derivative lawsuits are rarely successful." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

In particular, Plaintiffs faced the risk that the Derivative Actions might not have withstood challenge at the pleading stage, especially given the stringent standard for pleading demand futility pursuant to Federal Rule of Civil Procedure 23.1. *See City of Birmingham Relief & Ret. Sys. v. Hastings*, 2019 WL 3815722, at *4 (N.D. Cal. Feb. 13, 2019) ("The requirement of particularized facts means a plaintiff's pleading burden in the demand [futility] context is more onerous than that required to withstand a Rule 12(b)(6) motion.") (quoting *Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008)). Moreover, some of Plaintiffs' claims may be construed as alleging failures of monitoring and oversight, a theory of liability known to be "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 928 (N.D. Cal. 2010) (quoting *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)).

If Plaintiffs prevailed at the motion to dismiss stage, continued litigation would be extremely complex, costly, and of substantial duration. Document discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery conducted. *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 524 (N.D. Cal. Apr. 7, 2020) (describing the stage after a motion to dismiss is denied as the stage "when discovery begins in earnest, and in securities cases there is usually a lot of discovery").

Significant costs and risks would remain for Plaintiffs to improve the result through further litigation. Continued litigation would be protracted and expensive, considering the complexity, uncertainty, and risks inherent in the Derivative Actions, including the very real risk of no recovery. *See* Stip., §II; *see Katz v. China Cent. Dragon Media, Inc.*, 2013 WL 11237202, at *4-5 (C.D. Cal. Oct. 10, 2013) (recognizing that continued litigation would be "protracted, expensive, and complex"). A favorable judgment at trial would likely result in extensive post-trial motions and appeal. *See Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. Jan. 5, 2004) ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation."). The amount of recoverable damages would have posed further issues and would have been subject to further litigation. *See Katz*, 2013 WL 11237202, at *4 ("Because both sides would likely present expert testimony regarding the source of Plaintiffs' losses, a complex 'battle of the experts' would have been probable.").

        c.     <u>Experienced Counsel Support the Settlement</u>

Significant weight should be attributed to the Settling Parties' belief that the litigation should be settled on the proposed terms because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Pac. Enterprises*, 47 F.3d at 378. Plaintiffs' Counsel have extensive experience with shareholder representative

litigation. Derivative Plaintiffs' counsel's experience is set forth in the respective firm resumes of The Brown Law Firm, P.C. and Gainey McKenna & Egleston. (ECF No. 15, Exhibits A and B). *See also In re India Globalization Capital, Inc., Derivative Litig.*, 2020 WL 2097641, at *4 (D. Md. May 1, 2020) ("In addition to the impressive resumes of named counsel in this case [The Brown Law Firm, P.C. and Gainey McKenna & Egleston], both firms have extensive experience in shareholder derivative litigation"); *see also City of Taylor Gen. Employees Ret. Sys. v. Astec Indus., Inc.*, 2019 WL 2611013, at *3 (E.D. Tenn. June 26, 2019) (describing the attorneys of The Rosen Law Firm, P.A., counsel for plaintiff Chew here, as "highly-qualified" and "experienced"). As a result of their experience, Plaintiffs' Counsel have unique insight into the legal and factual issues presented. Based on Plaintiffs' Counsel's thorough review and analysis of the relevant facts, Plaintiffs' Counsel believe that the Settlement set forth in the Stipulation is in the Company's best interest, is fair, reasonable, and adequate, and confers substantial benefits upon Beyond Meat. *See* Stip., §II. Moreover, the members of the Company's Board, in exercising their business judgment, have determined that the Settlement is in the best interest of Beyond Meat and its stockholders. *See* Stip., §IV, ¶2.4.

In sum, the Settlement provides Beyond Meat and its stockholders with immediate and long-lasting benefits through the Reforms, as set forth above. Weighed against the substantial risk that continued litigation would yield no benefit for Beyond Meat, the recovery here is fair, reasonable, and adequate. Accordingly, the Settlement should be preliminarily approved as a practical resolution of complex and costly litigation that is in the best interest of Beyond Meat and its stockholders.

## V.   THE COURT SHOULD APPROVE THE FORM AND MANNER OF NOTICE

Rule 23.1(c) requires that notice of a proposed shareholder derivative settlement be given to stockholders "in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Notice of settlement proceedings in a derivative action must be

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Derivative Plaintiffs seek Court approval of the form and manner of the Notice, which is attached to the Stipulation as Exhibit B. The Stipulation provides that, within ten (10) days after the entry of the Preliminary Approval Order, Beyond Meat shall cause notice of the Settlement to be disseminated as follows: (1) posting a copy of the Notice and the Stipulation, with its exhibits, on the Investor Relations page of the Company's website; (2) filing the Notice and the Stipulation, with its exhibits, with the SEC as exhibits to a Form 8-K or other appropriate filing; and (3) issuing the Notice in a press release. The Notice will provide a link to the Investor Relations page of Beyond Meat's website where the Notice and Stipulation and its exhibits may be viewed through the date of the Settlement Hearing.

The proposed notice program is reasonably calculated to apprise Current Beyond Meat Stockholders of the pendency and Settlement of the Derivative Actions and affords them an opportunity to present objections, if any. The Notice provides information about, *inter alia*: (1) the terms of the Settlement; (2) the procedure for objecting to the Settlement; (3) the date of the Settlement Hearing; and (4) the Fee and Expense Amount and the Service Awards. *See* Stip., Exhibit B.

The Settling Parties believe that the content and manner of the notice, as set forth in this paragraph, constitutes adequate and reasonable notice to Current Beyond Meat Stockholders pursuant to applicable law and due process requirements. Stip., §IV, ¶3.3. Indeed, the Settling Parties' proposed method of notice has been approved by numerous courts as reasonable and sufficient to satisfy due process. *MRV Commc'ns*, 2013 WL 2897874, at *1 (approving settlement where notice was filed as an attachment to a Form 8-K, published on company website, and published one time in *Investor's Business Daily*); *Bushansky v. Armacost*, 2014 WL 2905143, at

*7 (N.D. Cal. June 25, 2014) (requiring a notice plan to include a link on defendant's investor relations website that leads to a webpage to be displayed for a minimum of thirty days, a press release to be issued by defendant, and a Form 8-K filing with the SEC); *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2, 4 (N.D. Cal. Jan. 20, 2009) (approving settlement where notice included posting on the company's website, press release, and a Form 8-K filing with the SEC). Accordingly, the proposed form and plan of notice warrant this Court's approval.

## VI.   PROPOSED SCHEDULE

In connection with preliminary approval of the Settlement, Derivative Plaintiffs request that the Court establish dates by which the notice of the Settlement will be disseminated to Current Beyond Meat Stockholders, by which Current Beyond Meat Stockholders may comment on the Settlement, and on which the Settlement Hearing will be held. They propose the schedule set forth below.

| Event | Deadline |
|---|---|
| Deadline for Beyond Meat to: (1) post a copy of the Notice and the Stipulation on the Investor Relations page of the Company's website, (2) file the Notice and the Stipulation, with its exhibits, with the SEC as exhibits to a Form 8-K; and (3) issue the Notice in a press release. | Not later than ten (10) calendar days following the entry of the Preliminary Approval Order |
| Deadline for filing all papers in support of the Settlement, the Fee and Expense Amount, and the Service Awards | At least twenty-eight (28) calendar days prior to the Settlement Hearing |
| Deadline for Settling Defendants' Counsel to file proof with the Court of the dissemination of the notice of the Settlement by affidavit or declaration | No later than twenty (20) calendar days following the entry of the Preliminary Approval Order |
| Deadline for any objections by Current Beyond Meat Stockholders to the Settlement, the Fee and Expense Amount, or the Service Awards to be filed with the Court and served on counsel for the Settling Parties | At least twenty-one (21) calendar days prior to the Settlement Hearing |

| Deadline for filing of any reply papers to objections by Current Beyond Meat Stockholders, if any | At least seven (7) calendar days prior to the Settlement Hearing |
|---|---|
| Settlement Hearing date | At least fifty-five (55) calendar days after the entry of the Preliminary Approval Order |

Derivative Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit C to the Stipulation, after inserting a date for the Settlement Hearing in paragraph 2.

## VII.   CONCLUSION

Given the benefits that the Settlement provides to Beyond Meat and Current Beyond Meat Stockholders, Derivative Plaintiffs respectfully request the Court to: (i) preliminarily approve the proposed Settlement; (ii) approve the form and manner of the Notice; and (iii) schedule the Settlement Hearing.

Respectfully submitted by:

DATED: January 14, 2022                    **THE BROWN LAW FIRM, P.C.**

*/s/ Robert C. Moest*
Robert C. Moest, Of Counsel, SBN 62166
2530 Wilshire Boulevard, Second Floor
Santa Monica, CA 90403
Telephone: 310-915-6628
Facsimile: 310-915-9897
Email: RMoest@aol.com

Timothy Brown (*pro hac vice*)
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: 516-922-5427
Facsimile: 516-344-6204
Email:  tbrown@thebrownlawfirm.net

1

2 **TOSTRUD LAW GROUP, P.C.**
Jon A. Tostrud
3 1925 Century Park East, Suite 2100
Los Angeles, CA  90067
4 Telephone: (310) 278-2600
Facsimile: (310) 278-2640
5 Email: jtostrud@tostrudlaw.com
6

7 **GAINEY McKENNA & EGLESTON**
Thomas J. McKenna (*pro hac vice*)
8 501 Fifth Avenue, 19th Floor
New York, NY 10017
9 Telephone: (212) 983-1300
Facsimile: (212) 983-0383
10 Email: tjmckenna@gme-law.com
11

12 *Counsel for Derivative Plaintiffs*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28